[Civ. No. 11761. Second Appellate District, Division Two.—March 24, 1938.]

INSURED LIFE FUND COMPANY (a Corporation) et al., Respondents, v. ARTHUR E. WARD, Appellant.

H. E. Gleason and Lee D. Mathews for Appellant.

Stanley Arndt for Respondents.

WOOD, J.—Defendant appeals from a judgment rendered in an action for declaratory relief, by which it was adjudged that he was not the holder of an insurance policy claimed to have been issued by one of the plaintiff corporations.

Plaintiff Insured Life Fund Company was originally incorporated in October, 1930, under the name of Providential Assurance Corporation, under the provisions of chapter VI, title II, part IV, division I, of the Civil Code, as then in force. These or similar provisions have since been included in the Insurance Code. The name of this corporation was later changed to its present title.

Insured Life Fund Company, which will hereinafter be referred to as plaintiff, was organized by defendant Ward

with two others, Portman and Holmes. Ward was the owner of certain copyrights in a type of insurance policy and he formed the plaintiff corporation for the purpose of marketing this type of insurance. Another corporation, Assurance Agency Ltd., was formed by defendant and his associates and was made the general agent to sell the policies to be issued by plaintiff. Assurance Agency Ltd. then appointed Holmes and Portman as its exclusive sales managers to do the selling. Holmes made an agreement to share his profits on the selling with Ward.

At the time of the organization of plaintiff corporation section 453 (e) of the Civil Code provided in part: "Corporations may be formed to carry on the business of mutual insurance upon the assessment plan, and are subject only to the provisions of this chapter. No such corporation which may be hereafter formed may issue contracts of insurance until at least one thousand persons have applied, in writing, to the insurance commissioner, for membership or insurance therein, and have paid to the treasurer of such corporation the sum of twenty-five thousand dollars." Defendant and his associates interested in the project a number of residents of Santa Barbara, who are referred to in the briefs as the Santa Barbara group. The sum of $25,000 was paid by the Santa Barbara group for stock in Assurance Agency Ltd., and this sum was in turn deposited with the state treasurer to be held in accordance with the provisions of section 453 (e) of the Civil Code. At some later time this sum of $25,000 was withdrawn from the state treasurer and returned to the Santa Barbara group and in its stead there was deposited with the state treasurer, with the consent of the insurance commissioners, securities of the value of $45,000, which were the property of the Angelus Securities Corporation.

In a purported effort to comply with the provisions of the code above referred to defendant and his associates determined to sell applications for a certain type of policy known as founders membership certificates. They induced 1,004 persons to sign a document entitled "Application for Insurance in the Providential Assurance Corporation, Santa Barbara, California". This document contained the following clause: "It is agreed that there shall be no liability hereunder until a policy has been issued and delivered to me, while in good health, and the first premium thereon actually

paid during my lifetime, provided, however, that if said premium is paid in full to the company's agent at the time of making application, then the insurance (subject to the provisions of the policy as issued) shall be effective from the date of approval of this application by the company at its home office.'' Many of these applications were signed by minors. None of the applicants paid the initial premium on the policies, but, nevertheless, founders membership certificates were given to the 1,004 persons who had signed the application blanks. The policy held by defendant Ward was one of the 1,004 just referred to. According to the founders membership certificates each policy holder was required, in order to keep his policy in good standing, to pay to the corporation the sum of fifty cents per month and the corporation thereby became liable to pay to the insured a certain sum upon the death of the insured. This sum varied in accordance with the ages of the policy holders. In the case of defendant the fixed amount of the policy was the sum of $120. Concerning these policies the trial court found: ''1,004 pretended applications, including a pretended application of said Ward, were filed with the Insurance Commissioner of the State of California, but said pretended applications were not *bona fide* applications but were pretended applications designed and used by said Ward, Portman and Holmes to deceive the Insurance Commissioner of the State of California, and to evade the provisions of Section 453 (e) of the Civil Code of the State of California. No initial premium whatsoever has been paid by any of said purported applicants and no part of the said $25,000.00 had been paid to the treasurer of said corporation by said purported applicants or any of them or by said Ward.''

At the trial of the action counsel for defendant stated that the only question involved was ''whether Mr. Ward has a policy, and if he does, what his rights are''. Counsel further stated that no interest in the fund deposited with the state treasurer was claimed except such as could be claimed as a policy holder. ▮ The trial court found that defendant was not a policy holder and we are satisfied that this finding is supported by the evidence. Defendant's policy is dated December 1, 1931. It bears the lithograph signature of himself as secretary and also the lithograph signature of the president of the corporation. At a meeting of the board of

directors of the corporation held on June 13, 1931, this resolution was passed: "Resolved, that the board of directors of this corporation be and it is hereby authorized, in its discretion, to sell policies or certificates of insurance of this corporation, in such form, for such amounts and to such persons from time to time as shall be determined by the board, and as may be permitted by law." The directors of the corporation decided to secure reinsurance from another company and authorized one of their number to make inquiries of the Great Republic Insurance Company concerning the reinsurance. The minutes of a meeting held before December 1, 1931, show that a motion was passed, "that no policy or contract be issued until definite arrangements had been made in regard to the reinsurance matter". Not until December 15, 1931, was a reinsurance contract executed. Defendant's policy was not reinsured at any time. Defendant was secretary of the corporation and was informed of the various actions of the board of directors. It is manifest from the minutes of the board that the issuance of the policy held by defendant was not authorized.

 Defendant points to the fact that the corporation for some time after the issuance of the policy received his monthly dues at the rate of fifty cents per month. Thereafter the corporation refused to receive his dues. The exact amount paid by defendant does not appear from the record, but it is approximately $17.00. New officers took charge of the corporation and the court found upon sufficient evidence that the corporation on discovering the true facts properly took action to notify defendant that his policy was not considered in force.

 Defendant contends that the trial court erred in admitting in evidence the deposition of defendant Ward. It appears that the deposition in question was taken in an action between the same parties in which Ward as plaintiff was demanding his salary and damages growing out of the transactions surrounding the organization of the plaintiff corporation. This action had been dismissed. It is provided in section 2022 of the Code of Civil Procedure that a deposition of a party can be read in evidence "in any other action or proceeding between the same parties or their privies or successors in interest upon the same subject . . . " The present action involved the same subject as that involved in the ac-

tion commenced by defendant even though the relief demanded was different. The code does not require that the causes of action be the same in order to make admissible in a later action a deposition taken in an earlier one. The deposition was also admissible on the ground that it contained declarations against the interest of defendant. Moreover, it is not shown that defendant was prejudiced in any way by the admission of the deposition. Defendant testified in the action as a witness and his examination was not in any way curtailed. The court permitted objections to be made to the various questions propounded at the taking of the deposition. It is not shown that any matter contained in the deposition was improperly admitted.

Defendant contends that the trial court failed to make findings on certain allegations contained in the pleadings. It is manifest that no findings could have been made in addition to those actually made which would call for a different judgment.

The judgment is affirmed.

Crail, P. J., and McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 18, 1938.